Noel L. Hillman
Christopher Walsh
J. Brugh Lower
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

*Attorneys for Plaintiffs*
*Novo Nordisk A/S and*
*Novo Nordisk Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NOVO NORDISK A/S and NOVO NORDISK INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIFERXMD INC., <br><br> Defendant. | Civil Action No. 24-9018 |

## COMPLAINT

Plaintiffs Novo Nordisk A/S ("NNAS"), with a principal place of business at Novo Alle 1, 2880 Bagsvaerd, Denmark, and Novo Nordisk Inc. ("NNI"), with a principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey 08536 (collectively, "Plaintiffs" or "Novo Nordisk"), by and through their undersigned attorneys, for their complaint for false advertising seeking injunctive and other relief against Defendant LifeRxMd Inc. ("Defendant"), with a principal place of business at 401 Cooper Landing Road, No. C1, Cherry Hill, New Jersey 08002, hereby allege as follows, on actual knowledge with respect to themselves and their own acts, and on information and belief as to all other matters.

## INTRODUCTION

1.      Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat serious chronic diseases like diabetes and obesity.

2.      The development of semaglutide is an example of Novo Nordisk's commitment to innovation for people living with chronic diseases. Semaglutide is the foundational molecule that serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"): Ozempic® (semaglutide) injection and Rybelsus® (semaglutide) tablets for adults with type 2 diabetes and Wegovy® (semaglutide) injection for chronic weight management.

3.      Novo Nordisk is the only company in the United States with FDA-approved medicines containing semaglutide. Novo Nordisk is also the only company authorized to identify its medicines containing semaglutide using the trademarks Ozempic®, Wegovy®, and Rybelsus®. The FDA has not approved any generic versions of these medicines. To the contrary, the FDA has sent warning letters to companies that claimed that their unapproved drug products have the "[s]ame active ingredient as Ozempic, Rybelsus, and Wegovy," noting that Ozempic and Wegovy are currently the only "two injectable semaglutide products FDA-approved for the U.S. market."[1]

4.      This is an action brought pursuant to the Lanham Act, 15 U.S.C. §§ 1051 et seq., related state laws, and the common law arising out of Defendant's infringement of Plaintiffs' rights in their Ozempic® and Wegovy® marks, and false advertising.

---

[1] FDA – Warning Letter to Ozempen.com, MARCS-CMS 684435 — JUNE 24, 2024, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozempencom-684435-06242024.

5.      Defendant uses Novo Nordisk's Ozempic® and Wegovy® marks to market and sell to patients compounded drug products that purport to contain semaglutide. Despite such compounded drug products having not been evaluated by the FDA for their safety, effectiveness, or quality, Defendant falsely and misleadingly represents to patients that its products are the same as, or equivalent to, Novo Nordisk's FDA-approved medicines.

6.      Defendant's conduct is likely to confuse and deceive patients into mistakenly believing that they are purchasing authentic Novo Nordisk medicines or medicines that have been evaluated by the FDA, studied in clinical trials, and deemed safe and effective.

## THE PARTIES

7.      Plaintiff NNAS is a corporation organized and existing under the laws of the Kingdom of Denmark and has its principal place of business at Novo Alle 1, 2880 Bagsvaerd, Denmark.

8.      Plaintiff NNI is a corporation organized and existing under the laws of Delaware and has its principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey 08536.

9.      NNI promotes, offers, and/or sells Novo Nordisk's Ozempic® and Wegovy® medicines throughout the United States, including in this District. NNAS has granted to NNI exclusive rights to market, advertise, promote, offer for sale and sell Ozempic® and Wegovy® medicines in the United States.

10.     Defendant LifeRxMd Inc. is a New Jersey corporation with a business address at 401 Cooper Landing Road, No. C1, Cherry Hill, New Jersey 08002, in this judicial district. Defendant sells and promotes compounded drug products that purport to contain semaglutide and that are not approved by the FDA ("Unapproved Compounded Drugs"). Defendant sells and promotes Unapproved Compounded Drugs masquerading as Ozempic® and Wegovy® and makes false claims in its advertising and promotion of those Unapproved Compounded Drugs.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over the Lanham Act causes of action pleaded herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a). The Court has supplemental jurisdiction over the state and common law causes of action pleaded herein pursuant to 28 U.S.C. § 1338(b).

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides and operates in this District, manufacture and/or sell its compounded drug products that purport to contain semaglutide in this District, and otherwise conducts business in this District. Defendant is subject to personal jurisdiction in this District because Defendant is a New Jersey corporation and has a principal place of business in New Jersey.

## NOVO NORDISK'S FDA-APPROVED SEMAGLUTIDE MEDICINES AND OZEMPIC® AND WEGOVY® TRADEMARKS

13.     Plaintiffs use the trademarks "Ozempic" and "Wegovy" to identify and promote the FDA-approved Ozempic® and Wegovy® medicines. The Ozempic® and Wegovy® medicines are sold and marketed in the United States by NNAS's indirect, wholly-owned subsidiary, NNI.

14.     The Ozempic® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise. The Ozempic® medicine also lowers the risk of major cardiovascular events such as stroke, heart attack, or death in adults with type 2 diabetes and known heart disease.

15.     The Wegovy® medicine is indicated to reduce excess body weight and maintain weight reduction long term in adults and children aged ≥ 12 years with obesity, and some adults with overweight and weight-related medical problems, along with a reduced calorie diet and increased physical activity.  The Wegovy® medicine is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of major adverse cardiovascular events such as

"cardiovascular" death, heart attack, or stroke in adults with known heart disease and with either obesity or overweight.

16.     The Ozempic® and Wegovy® medicines have been extensively studied in clinical trials and are FDA-approved.

17.     Each of the Ozempic® and Wegovy® medicines has a unique safety and efficacy profile which is detailed in its respective product label.

18.     The Ozempic® and Wegovy® medicines are prescription-only medicines that should only be prescribed in direct consultation with, and under the supervision of, a licensed healthcare professional.

### DEFENDANT'S SALE OF UNAPPROVED COMPOUNDED DRUGS

19.     Novo Nordisk has not authorized Defendant to use its marks, has not provided Defendant with Novo Nordisk's FDA-approved semaglutide medicines, and does not sell the bulk semaglutide in Novo Nordisk's FDA-approved semaglutide medicines to any compounding pharmacies from which it may be sourcing its Unapproved Compounded Drugs.

20.     Defendant markets and sells to patients Unapproved Compounded Drugs that purport to contain semaglutide and that are not approved by the FDA.

21.     On information and belief, the Unapproved Compounded Drugs sold by Defendant are made by compounding pharmacies, which deliver them either directly to patients or to Defendant for administration or dispensing to patients.

22.     The FDA defines compounding as a "practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a

licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[2]

23.    According to the FDA, "[c]ompounded drugs are not FDA-approved. This means that FDA does not review these drugs to evaluate their safety, effectiveness, or quality before they reach patients."[3]

24.    The FDA has further stated that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs. Unnecessary use of compounded drugs unnecessarily exposes patients to potentially serious health risks."[4]  As the FDA has explained, "[c]ompounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness. Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug."[5]

25.    Based on data as of June 30, 2024, the FDA's Adverse Event Reporting System (FAERS) database includes 542 cases of adverse events associated with compounded "semaglutide."[6]  Of those cases, 388 were classified as "serious" adverse events, 124 reported hospitalization, and ten involved deaths.  This is more than twice the number of adverse events

---

[2] Human Drug Compounding, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.

[3] Compounding Laws and Policies, https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.

[4] Compounding and the FDA: Questions and Answers, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.

[5] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.

[6] FDA Adverse Event Reporting System (FAERS) Public Dashboard, https://www.fda.gov/drugs/questions-and-answers-fdas-adverse-event-reporting-system-faers/fda-adverse-event-reporting-system-faers-public-dashboard (last visited July 31, 2024).

for all compounded drugs in 2022.  The FDA has received reports of adverse events, some requiring hospitalization, related to overdoses from dosing errors associated with compounded "semaglutide" products.[7]  In several instances, patients mistakenly administered five to 20 times more than the intended dose of compounded "semaglutide."  The FDA believes the containers and packaging used by compounders, including multidose vials and prefilled syringes, the varying product concentrations, and the instructions accompanying the compounded drug contribute to the potential medical errors.  A previous publication from the Journal of the American Pharmacists Association also highlighted administration errors where patients accidentally self-administered doses of compounded "semaglutide" up to 10 times greater than the intended amount.[8]

26.    FDA has issued guidance on "Medications Containing Semaglutide Marketed for Type 2 Diabetes or Weight Loss," which provides that: (1) "compounded drugs are not FDA-approved or evaluated for safety and effectiveness"; and (2) "FDA has received adverse event reports after patients used compounded semaglutide. Patients should not use a compounded drug if an approved drug is available to treat a patient. Patients and health care professionals should understand that the agency does not review compounded versions of these drugs for safety, effectiveness, or quality."

---

[7] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.

[8] Joseph E. Lambson et al, *Administration Errors of Compounded Semaglutide Reported to a Poison Control Center—Case Series*, 63 J. Am. Pharmacists Assc'n 5 (2023), available at https://www.japha.org/article/S1544-3191(23)00231-5/abstract.

## DEFENDANT'S FALSE ADVERTISING IN CONNECTION WITH ITS SALE OF UNAPPROVED COMPOUNDED DRUGS

27.     Despite the foregoing, Defendant falsely advertised its Unapproved Compounded Drugs by making statements that describe Ozempic® and Wegovy® but that are false or misleading when in reference to Defendant's Unapproved Compounded Drugs.

28.     Defendant falsely advertises its Unapproved Compounded Drugs by making statements that describe Ozempic® and Wegovy® but that are false or misleading when in reference to Defendant's Unapproved Compounded Drugs.

29.     Defendant has claimed or implied that its Unapproved Compounded Drugs have been approved by the FDA or have been reviewed by the FDA for safety, effectiveness, and quality.

30.     Defendant has claimed or implied that its Unapproved Compounded Drugs contain the same semaglutide that the FDA evaluated in the context of reviewing and approving Novo Nordisk's new drug applications for Ozempic® and Wegovy®.

31.     Defendant has claimed or implied that its Unapproved Compounded Drugs are compounded or generic versions of Wegovy® and Ozempic®.

32.     On information and belief, Defendant has engaged in these unlawful practices to attract customers and generate revenues and profits, including by passing off its Unapproved Compounded Drugs purporting to contain "semaglutide" as Ozempic® and Wegovy® or authorized variations of those medicines.

33.     Novo Nordisk has no control over the nature, quality, or efficacy of the products sold by Defendant, including the Unapproved Compounded Drugs.

34.     Defendant's false advertising is reflected in the paragraphs that follow, as well as **Exhibit A** hereto.

35.    Defendant falsely claims on its website that its Unapproved Compounded Drugs have been approved by the FDA or have been subjected to clinical studies and trials.



## How effective is Semaglutide for weight loss in non-diabetics?

Originally designed for type 2 diabetes, Semaglutide is now also effective for weight loss in people without the condition. This medication works similarly to a natural hormone called GLP-1, which helps regulate appetite, food intake, and energy. By reducing hunger, increasing feelings of fullness, influencing food choices, and improving how the body uses insulin, semaglutide offers a new approach to managing weight.

According to a 68-week study published in a prestigious medical journal, the Journal of the American Medical Association, a specific medication showed promising results for weight loss.
The study found that Semaglutide, when combined with lifestyle changes, led to significant weight reduction compared to other medications like Liraglutide. This suggests that this treatment could be a valuable tool in addressing the obesity epidemic. The study highlights the potential for this medication to promote gradual and sustainable weight loss, offering a new approach to weight management for people who are not diabetic.

36.     Defendant also falsely indicates that its Unapproved Compounded Drugs are a generic version of the Ozempic® and Wegovy® medicines, and that the latter are merely a "brand name" version of the same medicine.

## For Weight Loss:

- Semaglutide, under the brand name Wegovy, is FDA-approved for weight management in adults with obesity or overweight (BMI ≥ 27 kg/m2 with weight-related conditions) when used alongside a healthy diet and exercise program.

37.     Defendant's characterization of Wegovy®  as "the brand name" of its Unapproved Compounded Drugs inaccurately indicates that Defendant's Unapproved Compounded Drugs are a generic version of the Ozempic® and Wegovy® medicines. A generic drug is one that the FDA has found to meet the "same high standards of quality and manufacturing as the brand-name product."[9]  No generic form of Plaintiffs' FDA-approved Ozempic® and Wegovy® medicines currently exists.

---

[9] U.S. Food & Drug Administration – Generic Drugs: Questions & Answers (March 16, 2021) https://www.fda.gov/drugs/frequently-asked-questions-popular-topics/generic-drugs-questions-answers#:~:text=A%20generic%20drug%20is%20a,performance%20characteristics%2C%20and

38.     The FDA has not reviewed, let alone approved as a generic drug, the Defendant's Unapproved Compounded Drugs for safety, effectiveness, or quality. Defendant has no basis to claim that its Unapproved Compounded Drugs are a generic of, or otherwise equivalent to, Novo Nordisk's FDA-approved medicines.

39.     Defendant also makes numerous claims that falsely equate its Unapproved Compounded Drugs with Novo Nordisk's FDA-approved medicines.

40.     Defendant misleadingly and unnecessarily uses the Ozempic® mark as a hashtag in its advertisement of its Unapproved Compounded Drugs on social media.



41.     Defendant has falsely represented that its Unapproved Compounded Drugs are "available in brand names like Ozempic (diabetes treatment) and Wegovy (obesity treatment)" and contain the "[a]ctive ingredient in Ozempic® and Wegovy®.

---

%20intended%20use.

# How can you get Semaglutide for weight loss?



Semaglutide is a medication available in brand names like Ozempic (diabetes treatment) and Wegovy (obesity treatment). However, getting Semaglutide for weight loss requires a prescription from a licensed healthcare provider.

During your appointment, the healthcare provider will:

- Discuss your medical history and current medications.
- Perform blood tests (optional).
- Review your weight loss goals and overall health.





# Semaglutide

✔ Active ingredient in Ozempic® and Wegovy®.

✔ Flat Rate. No matter the dose.

✔ Flat Rate for up to 12.5mg

(The FDA Maximum Recommended Dosage)

---

Flat Rate

## $250

FDA registered 503a & 503b. State certified
pharmaceutical registered

**Get Started**

42.    To the contrary, Novo Nordisk is not directly or indirectly supplying semaglutide to Defendant or any compounding pharmacies from which it may be sourcing its Unapproved Compounded Drugs.

43.    Defendant further misleads patients, on its website and in advertising, by making a number of false and misleading claims about the effectiveness of its Unapproved Compounded Drugs. Defendant claims that its Unapproved Compounded Drugs "can lead to an average weight loss of 10-15% of body weight within a year" and "regulate blood sugar levels alongside promoting weight loss":

Semaglutide is a synthetic derivative of a naturally occurring hormone called glucagon-like peptide-1 (GLP-1). GLP-1 plays a crucial role in regulating blood sugar and appetite. It works by mimicking the actions of GLP-1 in the body, leading to several effects that promote weight loss:

- **Increased Satiety:** Semaglutide slows down gastric emptying, the process by which food moves from your stomach to your small intestine. This translates to feeling fuller for longer, leading to reduced calorie intake.
- **Enhanced Insulin Sensitivity:** Semaglutide helps your body utilize insulin more effectively, promoting better blood sugar control and reducing cravings for sugary foods.
- **Reduced Appetite:** Semaglutide acts on receptors in the brain regions controlling appetite, leading to decreased hunger and a diminished desire to eat.

These combined effects contribute to significant weight loss in individuals struggling with obesity. Studies have shown that Semaglutide, when combined with lifestyle modifications, can lead to an average weight loss of 10-15% of body weight within a year

## Benefits of Semaglutide for Weight Loss

Semaglutide offers a promising array of benefits for those seeking to achieve and maintain a healthy weight:

- **Effective Weight Loss:** Semaglutide has been demonstrably effective in promoting significant and sustained weight loss, exceeding what can typically be achieved through diet and exercise alone.
- **Improved Blood Sugar Control:** Semaglutide can be particularly beneficial for individuals with obesity and type 2 diabetes, as it helps regulate blood sugar levels alongside promoting weight loss.
- **Reduced Cardiovascular Risk:** Studies suggest that Semaglutide may improve cardiovascular health by lowering blood pressure and reducing the risk of heart disease, a common concern for individuals with obesity.
- **Enhanced Appetite Control:** The appetite-suppressing effects of Semaglutide can be a game-changer, making it easier to stick to a calorie deficit and manage cravings.
- **Improved Overall Well-being:** Weight loss with Semaglutide is often accompanied by increased energy levels, improved mood, and a better quality of life.

44.     Novo Nordisk's FDA-approved medicines are the only drugs containing semaglutide to have been publicly studied for weight loss in clinical trials. On information and belief, no such data exists for Defendant's Unapproved Compounded Drugs.

45.     On information and belief, Defendant has engaged in these unlawful practices to attract customers and generate revenues and profits.

46.     Defendant's false and misleading statements and practices are likely to cause mistake and deception in the marketplace.

47.     Defendant's false and misleading marketing is also likely to expose patients to unnecessary risks. Patients who mistakenly believe Defendant to be offering Novo Nordisk's FDA-approved medicines, or equivalent thereto, are unlikely to understand the unique risks associated with, or the lack of clinical trials or testing establishing the safety and effectiveness of, Defendant's Unapproved Compounded Drugs.[10]

48.     On information and belief, unless enjoined by this Court, Defendant will continue to falsely advertise its products as being equivalent to, or associated with Ozempic® and Wegovy®, all in violation of Plaintiffs' rights.

## **<u>FIRST CAUSE OF ACTION</u>**

### **False and Misleading Advertising and Promotion in Violation of 15 U.S.C. § 1125(a)(1)(B)**

49.     Plaintiffs reallege and incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

---

[10] *See, e.g.*, Dozens Say They Lost Eyesight After Routine Surgery Using Compounded Pharmacy Drugs, WFAA, https://www.wfaa.com/article/news/do-not-publish-yet/287-5f002ed3-e110-4063-9959-a2e5f54b5097 (reporting mistaken belief of patient taking a compounded drug that "every pill you take, every shot you take is tested.").

50.     Defendant's practices, as described in this Complaint, constitute unfair competition and false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

51.     Defendant has violated the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that misrepresent the nature, characteristics, and/or qualities of Defendant's business practices and products, as set forth above.

52.     Defendant has also engaged in other false or misleading advertising and promotion intended to assure patients that Defendant's practices are lawful. On information and belief, Defendant provides patients who purchase Defendant's Unapproved Compounded Drugs (or whom Defendant is trying to persuade to purchase its drugs) information that makes several false or misleading statements, including those described herein and in the exhibits hereto.

53.     The above-described acts of Defendant, if not enjoined by this Court, are likely to deceive members of the general public.

54.     The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs.

55.     The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

56.     By reason of Defendant's acts as alleged above, Plaintiffs have suffered and will continue to suffer injuries, including injury to Plaintiffs' business reputation. However, Plaintiffs' remedies at law are not adequate to compensate for all the injuries inflicted by Defendant. Accordingly, Plaintiffs are entitled to entry of preliminary and permanent injunctive

relief requiring Defendant to cease its false and misleading advertising and promotion and unfair

competitive practices.

57.    Because the above-described acts of Defendant are willful, the Court should

award disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages,

and costs under 15 U.S.C. § 1117 to Plaintiffs.

58.    This is an exceptional case, making Plaintiffs eligible for an award of attorneys'

fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### Unfair Competition in Violation of the Common Law

59.    Plaintiffs reallege and incorporate by reference each of the allegations in the

preceding paragraphs of this Complaint as though fully set forth here.

60.    The above-described acts of Defendant constitute common law unfair

competition.

61.    The above-described acts of Defendant unfairly and wrongfully exploit Plaintiffs'

trademark, goodwill, and reputation.

62.    By reason of the above-described acts of Defendant, Plaintiffs have suffered

damage to the goodwill associated with the Ozempic® and Wegovy® trademarks.

63.    The above-described acts of Defendant have irreparably harmed and, if not

enjoined, will continue to irreparably harm Plaintiffs and the Ozempic® and Wegovy®

trademarks.

64.    The above-described acts of Defendant have irreparably harmed and, if not

enjoined, will continue to irreparably harm the interest of the public in being free from

confusion, mistake, and deception.

65. By reason of Defendant's acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant. Accordingly, the Court should enter preliminary and permanent injunctive relief, in addition to awarding disgorgement of Defendant's profits and corrective advertising costs to Plaintiffs.

### THIRD CAUSE OF ACTION

**Unfair Competition in Violation of the New Jersey Fair Trade Act
N.J.S.A § 56:4-1 *et seq.***

66. Plaintiffs reallege and incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

67. The New Jersey Fair Trade Act, N.J.S.A § 56:4-1 *et seq.*, prohibits merchants from appropriating a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals.

68. Defendant has violated the New Jersey Fair Trade Act by using false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that misrepresent the nature, characteristics, and/or qualities of Defendant's business practices and products, as set forth above.

69. Defendant has also engaged in other false or misleading advertising and promotion intended to assure patients that Defendant's practices are lawful. On information and belief, Defendant provides patients who purchase Defendant's Unapproved Compounded Drugs (or whom Defendant is trying to persuade to purchase its drugs) information that makes several false or misleading statements, including those described herein and in the exhibits hereto.

70. The above-described acts of Defendant, if not enjoined by this Court, are likely to deceive members of the general public.

71.     The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs.

72.     The Court should enter preliminary and permanent injunctive relief, in addition to awarding disgorgement of Defendant's profits attributable to Defendant's statements to Plaintiffs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

1.     That the Court enter a judgment against Defendant that Defendant has:

a.  Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a);

b.  Engaged in unfair competition under the common law and violated the New Jersey Fair Trade Act, N.J.S.A. § 56:4-1 *et seq.*

2.     That the Court find that each of the above acts was willful.

3.     That the Court preliminarily and permanently enjoin and restrain Defendant and its agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

a.  using the Ozempic® and Wegovy® marks in any manner, including but not limited to (i) use in any manner that is likely to cause confusion or mistake, to deceive, or otherwise infringe Novo Nordisk's rights in the Ozempic® and Wegovy® marks in any way, or (ii) use in connection with the advertising, marketing, sale, or promotion of any Unapproved Compounded Drugs; and,

b.  advertising, stating, or suggesting that any Unapproved Compounded Drugs, including but not limited to any Unapproved Compounded Drugs that either are

available, directly or indirectly, from or through Defendant or the use of which or access to which is facilitated by, or with the involvement of, Defendant:

    i.   are, or contain, genuine or authentic Novo Nordisk Ozempic® or Wegovy® medicines;

   ii.   are sponsored by or associated with Novo Nordisk;

  iii.   are approved by the FDA; have been reviewed by the FDA for safety, effectiveness, or quality; or have been demonstrated to the FDA to be safe or effective for their intended use;

  iv.   achieve or have been shown or proven to achieve certain therapeutic results, effects, or outcomes, including but not limited to by relying on or making reference to clinical trial results for Novo Nordisk's medicines;

   v.   achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes similar or identical to Novo Nordisk's medicines and/or are interchangeable with or equivalent to genuine Novo Nordisk medicines;

  vi.   are associated or connected in any way with Novo Nordisk or Novo Nordisk's medicines; or

 vii.   contain any ingredient (including but not limited to semaglutide) that is supplied by Novo Nordisk, is approved by the FDA, or is the same as any ingredient in any Novo Nordisk medicine.

c.   engaging in any unfair competition with Plaintiffs; and/or

d.   engaging in any deceptive acts or practices.

4.      That the Court require Defendant to disclose conspicuously and prominently in any public-facing materials for any Unapproved Compounded Drugs, including but not limited to all advertising, marketing, and promotional materials, that: (a) the Unapproved Compounded Drugs are compounded drugs that have not been approved by the FDA; have not been reviewed by the FDA for safety, effectiveness, or quality; and have not been demonstrated to the FDA to be safe or effective for their intended use; (b) the processes by which the compounded drugs are manufactured have not been reviewed by the FDA; and (c) FDA-approved medicines containing semaglutide are available.

5.      That Plaintiffs be awarded monetary relief in the form of disgorgement of Defendant's profits for Defendant's false advertising and unfair competition and that this monetary relief be trebled due to Defendant's willfulness, in accordance with the provisions of 15 U.S.C. § 1117 and any applicable state laws.

6.      That the Court award disgorgement of Defendant's profits resulting from Defendant's infringement of Plaintiffs' rights and by means of Defendant's unfair competition to Plaintiffs.

7.      That Defendant be ordered to account for and disgorge to Plaintiffs all amounts by which Defendant has been unjustly enriched by reason of Defendant's unlawful actions.

8.      That Plaintiffs be awarded punitive damages by reason of Defendant's willful unlawful actions.

9.      That the Court award pre-judgment and post-judgment interest on all damages.

10.     That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

11.     That the Court award Plaintiffs the costs of suit incurred herein.

12.    That the Court award such other or further relief as the Court may deem just and

proper.

Dated: September 6, 2024                 Respectfully submitted,
      Newark, New Jersey

                                 s/ Christopher Walsh
                                 Noel L. Hillman
                                 Christopher Walsh
                                 J. Brugh Lower
                                 **GIBBONS P.C.**
                                 One Gateway Center
                                 Newark, New Jersey 07102
                                 (973) 596-4500
                                 nhillman@gibbonslaw.com
                                 cwalsh@gibbonslaw.com
                                 jlower@gibbonslaw.com

                                 Teena Sankorikal (*pro hac vice* forthcoming)
                                 Yuval Mor (*pro hac vice* forthcoming)
                                 **COVINGTON & BURLING LLP**
                                 One CityCenter
                                 850 10th Street, NW
                                 Washington, DC 20001
                                 (202) 662-6000

                                 *Attorneys for Plaintiffs*
                                 *Novo Nordisk A/S and*
                                 *Novo Nordisk Inc.*